ISRAEL SILBERMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101533. Promulgated May 29, 1941.

*Laurence Graves, Esq.*, for the petitioner.
*George R. Sherriff, Esq.*, for the respondent.

OPINION.

HARRON: Petitioner was engaged in the occupation of making, registering, and recording bets on horse races at duly licensed race tracks in New York State. He rented booths at various tracks, for the use of which he paid fees. He employed persons to register bets and assist him in these booths and in his activities and paid them salaries for

their services. At these booths he kept books and records for the purpose of recording bets and he received bets and paid bets. The aggregate amounts paid in the taxable year for fees for booths and salaries for assistants was $12,633.50. Petitioner claims that he is entitled to deduct these amounts as ordinary and necessary business expense or as losses under section 23 (a) or section 23 (e). Petitioner did not realize any gain or income from betting transactions in the taxable year, so that, obviously, he does not claim that he is entitled to offset the above expenditures against income from betting transactions. Petitioner did receive income in the taxable year from legal sources, from dividends on securities and from a paint and varnish company as "salaries, wages, commissions or fees", the nature of the services for such compensation not being shown, and petitioner seeks to reduce income received from legal business interests by deducting therefrom expenditures made in connection with illegal business activities. Respondent disallowed the deduction and, in our opinion, respondent's determination is correct. The following discussion relates to the status of betting and receiving of bets at race tracks in New York under the law of the State in 1936, prior to the amendment of Art. 1, par. 9 of the Constitution, November 7, 1939, and the enactment of the Pari-Mutuel Revenue Law, effective March 31, 1940.

Petitioner's gambling operations were illegal in New York by statutory prohibition, as was betting on races. Betting at race tracks was illegal in New York State, being forbidden by the state constitution and penal laws, the offense being punishable by a civil forfeiture. (1936) Op. Atty. Gen. 331. *Beach* v. *Queen's County Jockey Club*, 164 Misc. 363; 298 N. Y. S. 777. Bookmaking or the receiving and registering of bets upon a race at a race track is "gaming" or "gambling" and was illegal,[1] and it has been held that the lightness of the penalty imposed by the legislature, namely, forfeiture of money wagered to be recovered in a civil action, did not make these activities legal. *Chapin* v. *Austin*, 165 Misc. 414; 300 N. Y. S. 932. See McKinney's Consolidated Laws of New York Annotated, Book 2, Constitution, pp. 480–483; Art. 1, sec. 9 of the Constitution; Book 39, Penal Law, sec. 986, at p. 496, and sec. 991, at p. 506; Book 65, Unconsolidated Laws, par. 1141, sec. 17, at p. 172.

In section 986 of the Penal Law of New York, *supra*, it is provided that it is a misdemeanor except when another penalty is provided by law, for any person who is the owner, lessee, or occupant of a booth on any grounds in the state to knowingly permit the same to be used

---

[1] See amendment of Art. 1, par. 9, of the New York State Constitution as amended and approved November 7, 1939, effective January 1, 1940, which excepts from the provisions of Art. 1, par. 9, pari-mutuel betting on horse races as may be prescribed by the legislature. See also McKinney's Consolidated Laws of New York Annotated, book 65, Unconsolidated Laws, sec. 1939, in the Supplement. Effective March 31, 1940, the legislature enacted a new law which prescribes the conditions under which the pari-mutuel method of betting on horse races shall be lawful.

or occupied for receiving, registering, or recording bets, and for any person to aid or assist in receiving or recording bets, all of which are forbidden. Section 986 makes it illegal to permit another person to use a booth to receive and register bets and to aid another in receiving and registering bets.

Petitioner's gambling operations were illegal and the amounts he expended for fees and salaries were expenditures made to obtain occupancy and services which were illegal. Petitioner contends that the gambling activities were not "illegal" because they were not "criminally punishable", or that they were "illegal" only in the sense that they were "*ultra vires.*" The argument is without merit and is confused in many respects. It is wholly immaterial here that the statutory offense involved is *malum prohibitum* rather than *malum in se.* Petitioner's argument in essence is that his gambling operations were only "a little bit" illegal because the penalty of forfeiture of a bet received if a civil action is brought to recover the bet is only a light penalty. The only merit of the argument is its humor. We must proceed here with recognition that without any doubt betting, receiving, and recording bets, letting a booth be used for the same, and assisting anyone in doing the same, all were illegal under New York statutes.

Section 23 (g) of the Revenue Act of 1936 allows as deductions from gross income "losses from wagering transactions * * * only to the extent of the gains from such transactions." Since petitioner realized no gains from wagering transactions in the taxable year the deduction which he claims is not allowable under section 23 (g).

If the expenditures in question may be treated as loss from gambling transactions they are not deductible under section 23 (e), because gambling transactions were illegal in New York. *Mitchell M. Frey, Jr., et al., Executors*, 1 B. T. A. 338; *M. Rea Gano*, 19 B. T. A. 518, 529; *E. F. Simms*, 28 B. T. A. 988, 1034.

There remains only the question whether or not the expenditures may be deducted under section 23 (a), as ordinary and necessary business expenses, under such facts as are present in this case. We do not find a reported case involving this particular question under facts similar to the facts present in this case. In our opinion the expenditures are not deductible as ordinary and necessary business expense.

It is true that if petitioner had realized income or gains from his illegal gambling transactions such gain would be subject to income tax because of the broad definition of gross income set forth in section 22 (a), which covers gains or profits and income derived from any source whatever. *United States* v. *Sullivan*, 274 U. S. 259; *United States* v. *Yuginovich*, 256 U. S. 450; *Steinberg* v. *United States*, 14 Fed. (2d) 564. In spite of the seeming inconsistency, even though income derived from an illegal business is subject to tax, expenditures

made in the carrying on of activities which in themselves are in contravention of law and illegal have been held to be not deductible as business expenses on grounds of public policy. *Great Northern Railway Co.* v. *Commissioner*, 40 Fed. (2d) 372; certiorari denied, 282 U. S. 855. In that case expenditures for the payment of fines for violating Federal statutes were said to have been made as a result of unlawful operations, prohibited specifically by statutes, and the court said, "It cannot be that Congress intended the carrier should have the advantage, directly or indirectly, of any reduction, directly or indirectly, of these penalties." Of course, the *Great Northern* case differs from this case, principally because the business of the taxpayer was a legal business in general and the infractions of law involved were only incidents in the conduct of business which generally was conducted in a lawful way. Here there are stronger reasons from the standpoint of public policy for denying petitioner business expense deductions for the sums expended for fees for the use of booths and for salaries for assistants. First, under section 986 of the Penal Law of New York it is illegal to let a booth be used for receiving or recording bets and it is illegal to assist in the receiving or recording of bets. The expenditures in the nature of rent and salaries were made for illegal occupancy and illegal services, as well as being made in the conduct of illegal gambling activities. Second, the petitioner in claiming deduction for these expenditures seeks to offset such expenditures against income from lawful sources received from other legal business activities, and to thereby obtain reduction of tax upon that income. Such claim differs from a claim that the income to be taxed from an illegal business is the net income received therefrom. Cf. *James P. McKenna*, 1 B. T. A. 326. In reality petitioner sustained loss from his illegal business activities and he seeks deduction for part of the loss in the guise of a claim for a deduction for business expenses. Under the rule of *Mitchell M. Frey, Jr., et al., Executors, supra*, losses sustained in illegal gambling operations are not deductible. Furthermore, as has been stated in the *Great Northern Railway* case, *supra*, it is not conceivable that Congress intended that section 23 (a), allowing deductions for business expenses, should be a medium for giving the benefits thereof directly or indirectly where the expenditures arise not only from unlawful activities but where the expenditures are made to others in compensation to them for unlawful activities. In *United States* v. *Sullivan*, *supra*, the taxpayer argued that income from an unlawful business is exempt from tax and that he did not have to file income tax returns. There was an allusion to the problem of expenditures made in pursuit of the unlawful business and, commenting on that, Justice Holmes said:

It is urged that if a return were made the defendant would be entitled to deduct illegal expenses such as bribery. This by no means follows but it will

be time enough to consider the question when a taxpayer has the temerity to raise it.

There is indication from the provisions of section 986 of the Penal Law of New York that the expenditures in question were illegal. They were, at the least, expenditures which are not deductible from taxable income on grounds of public policy. *New Orleans Tractor Co.*, 35 B. T. A. 218; and *H. S. Anderson*, 35 B. T. A. 10, 11, where it was said that, "It is now well established without any conflicting decisions that the illegality of the occupation or the transactions in which the taxpayer engages deprives him of any claim to the use of losses or expenses in reducing his taxable income."

It is held that petitioner is not entitled to deduction for the expenditures either as losses under section 23 (e) or as business expense under section 23 (a). It is immaterial whether the deduction is classified as a loss or as a business expense. *Lawrence A. Wagner*, 30 B. T. A. 1099, 1106.

*Decision will be entered for the respondent.*