**UNITED STATES of America,
Plaintiff,**

v.

**David Carroll STEPHENSON, individually and d/b/a American Business Estate & Tax Planning Service and Advocate and Associates, Inc.; A–1 Credit & Co.; American Business Law, Inc.; and American Business and Estate Planning, Defendants.**

**No. C03–5712 RBL.**

United States District Court,
W.D. Washington,
At Tacoma.

March 10, 2004.

Kari Madrene Larson, U.S. Department of Justice, Washington, DC, for Plaintiff.

David Carroll Stephenson, University Place, WA, pro se.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

LEIGHTON, District Judge.

The United States has filed a motion for a preliminary injunction against the defen-

dants pursuant to title 26 U.S.C. ("I.R.C.") sections 7402 and 7408. According to the complaint, defendants David Carroll Stephenson, individually and d/b/a American Business Estate & Tax Planning Service and Advocate and Associates, Inc.; Advocate NW & Co., Inc.; A-1 Credit & Co.; American Business Law, Inc.; and American Business & Estate Planning, are organizing and promoting an abusive tax scheme whereby they assist customers in evading federal tax liabilities and IRS collection efforts through the fraudulent use of trusts and business entities. The complaint alleges that defendants recruit customers to participate in the fraudulent trusts and business entities through word of mouth, through seminars held in the State of Washington, and through their written materials, titled *Real Solutions to Real Every Day Problems* and *Business Engineering, Estate Planning, and Asset Protection.*

Upon consideration of the pleadings filed in support of and in opposition to the motion, and the remainder of the file herein, the Court determines that the plaintiff has established its right to a preliminary injunction.

## I. *Injunctions under I.R.C. §§ 7402 and 7408*

The United States requests injunctive relief under I.R.C. § 7402 which provides as follows:

§ 7402. Jurisdiction of district courts

(a) To issue orders, processes, and judgments.— The district courts of the United States at the instance of the United States shall have jurisdiction to make and issue in civil actions, writs and orders of injunction ... as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

■■■ Under traditional equitable factors, a preliminary injunction is appropriate where the plaintiff establishes "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public interest (in certain cases)." *Southwest Voter Registration Education Project, et, al. v. Shelley,* 344 F.3d 914, 917–918 (9th Cir.2003), *quoting Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir.1995). "This analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the court that the public interest and balance of hardships in their favor." *Southwest Voter Registration Project,* 344 F.3d at 918, *citing, Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir.1992).

The Ninth Circuit has not determined whether the United States must show the traditional equitable factors in order to obtain a preliminary injunction.[1] The issue need not be addressed in the context of this case, because the court finds the traditional equitable factors are present.

■■■ The United States also requests injunctive relief under I.R.C. § 7408, which provides as follows:

(a) Authority to seek injunction. A civil action in the name of the United States to enjoin any person from further en-

---

**1.** The Eleventh Circuit has held that the United States must show the traditional equitable factors. *United States v. Ernst & Whinney,* 735 F.2d 1296, 1301 (11th Cir.1984) ("the decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the ... use of the equitable remedy.").

gaging in conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.) . . . may be commenced at the request of the Secretary . . .

(b) Adjudication and decree. In any action under subsection (a), if the court finds

(1) that the person has engaged in any conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.) . . . and

(2) that injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin such person from engaging in such conduct or in any other activity subject to penalty under section 6700 or section 6701.

The government bears the burden of proving each element necessary for the issuance of the injunction by a preponderance of the evidence. *United States v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir.2000). "The traditional requirements for equitable relief need not be satisfied since section 7408 expressly authorizes the issuance of an injunction." *Id.,citing Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir.1983).

II. *Violations of I.R.C. § 6700*

■ I.R.C. § 6700(a) authorizes the imposition of a penalty on any person who:

(1)(A) organizes (or assists in the organization of) -

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) -

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know if false or fraudulent as to any material, matter, or

(B) a gross valuation overstatement as to any material matter . . . .

■ The United States must prove five elements to obtain an injunction under I.R.C. sections 6700 and 7408. *Estate Preservation Services*, 202 F.3d at 1098. The elements are as follows:

(1) the defendants organized or sold or participated in the organization or sale of an entity, plan, or arrangement;

(2) they made or caused to be made false or fraudulent statements concerning the tax benefits to be derived from the entity, plan or arrangement;

(3) they knew or had reason to know that the statements were false or fraudulent;

(4) the false or fraudulent statements pertained to a material matter; and

(5) an injunction is necessary to prevent the reoccurrence of this conduct.

*Id.,citing* I.R.C. §§ 6700(a), 7408(b).

A. *The defendants organized, sold, and participated in the organization and sale of the seminars and fraudulent trusts and business entities.*

The documentation in support of the government's motion for a preliminary injunction shows that the defendants have organized or sold, or participated in the organization or sale of, a plan or arrangement that assists customers in evading

**1058**

federal tax liabilities and IRS collection efforts through the fraudulent use of trusts and business entities.

Through word of mouth,[2] seminars, and written materials titled *Real Solutions to Real Every Day Problems* and *Business Engineering, Estate Planning, and Asset Protection,* the defendant has advertised to purchasers with the goal of assisting them in setting up sham trusts with the ultimate purpose of eliminating income taxes. For example, the evidence demonstrates that the defendant has made the following misrepresentations and false claims in his marketing schemes: "Avoid probate, avoid death/estate taxes, and avoid IRS seizure" (*Real Solutions,* Plaintiff's Exh. 3 at 29); "Reduce or *eliminate* income taxes" (*Real Solutions,* Plaintiff's Exh. 3. at 83) (emphasis added); "Eliminate capital gains taxes" (*Real Solutions,* Plaintiff's Exh. 3 at 83); "Eliminate probate and estate taxes" (*Real Solutions,* Plaintiff's Exh. 3 at 83); Plato used the same type of trust to "finance his university in ancient Greece," (*Real Solutions,* Plaintiff's Exh. 3 at 68); William Waldorf Astor used the same type of trusts and "saved his heirs millions of dollars in death taxes and probate costs" (*Real Solutions,* Plaintiff's Exh. 3 at 68); "Others such as Henry Ford II, H.L. Hunt, as well as Former President Ronald Reagan" have all used these trusts to shield their assets (*Real Solutions,* Plaintiff's Exh. 3 at 68); ...Arranging one's personal and business affairs according to the directions of the IRS and the government...could leave a citizen in a deadly trap, a sitting duck if you will, for the IRS and other looting marauders (*Real Solutions,* Plaintiff's Exh. 3 at 10).

Defendants advise the use of "Pure Contract Trusts" and instruct their customers to transfer their personal assets into four different trusts, each intended to perform a unique function within the scheme, with the ultimate goal of evading taxes on income and wages and hiding assets from IRS collection efforts. (Martin Dec. 4: 10–15; *Real Solutions,* Plaintiff's Exh. 3, p. 73 (generally)). Stephenson serves as the "Executive Trustee" of these trusts, while the customer acts as the Managing Director. (Martin Dec. 4: 16–17). In fact, the customer maintains exclusive control over all trust property; the customers' relationships to their income and assets is not altered by participation in Stephenson's "trust." (Martin Dec. 4: 18–21). Customers continue to operate their businesses in virtually the same manner under Stephenson's program as they did before using Stephenson's program; the major difference is that payments for services are no longer made to Stephenson's customer directly, but are instead made to the customer's trust. (Martin Dec. 5: 4–7).

Stephenson charges between $2,500 and $8,000 for his trust and corporation packages. (Martin Dec. 8: 4). In exchange, customers generally receive a set of four trusts or other entities, pre-registered with different states, complete with pre-selected names, and valid IRS employer identifications numbers. (Martin Dec. 8: 4–7). Customers also receive the *Executive Trustee Operations Manual,* an instructional guide to transferring assets into the trusts and setting up trust bank accounts. (Martin Dec. 8: 6–11).

Stephenson's operation is based on the premise that trust income is not taxable income until it is disbursed to an individual. (*Real Solutions,* Plaintiff's Exh. 3 at p. 72). Stephenson also makes the following false statements about the internal revenue laws: Trust income is not subject to tax (*Real Solutions,* Plaintiff's Exh. 3 at 72); Filing tax returns is voluntary (*Real Solutions,* Plaintiff's Exh. 3 at 73); Only

---

2. (McCourt Dec. 2: 2–4)

those individuals or businesses that voluntarily disclose personal information on a tax return are subject to tax (*Real Solutions,* Plaintiff's Exh. 3 at 73); Participants' trusts cannot be compelled to turn over books or records to the IRS or to file federal tax returns (*Real Solutions,* Plaintiff's Exh. 3 at 73); Property held by contract trust is exempt from IRS seizure (*Real Solutions,* Plaintiff's Exh. 3 at 77); Only licensed business organizations have employees for employment tax purposes; all other business organizations have independent contractors (*Executive Trustee Operations Manual,* Plaintiff's Exh. 2 at 9–1); Income to a trust can be used to purchase personal assets without first being subject to tax (*Executive Trustee Operations Manual,* Plaintiff's Exh. 2 at 9–1; *Real Solutions,* Plaintiff's Exh. 3 at 72); Participating businesses should use the following statement instead of disclosing an EIN: "Exempt as per U.S.C. 26 Section 501(a); 645(b); 6109 and 7701(a)(31)" (*Executive Trustee Operations Manual,* Plaintiff's Exh. 2 at 9–2). Not surprisingly, many of these statements and information are taken out of context, and none of the tax positions that Stephenson takes are supported by legal precedent.

### B. *Defendants' statements are false.*

There is no legal support for the defendants' tax theory. *See United States v. Sullivan,* 274 U.S. 259, 263–264, 47 S.Ct. 607, 71 L.Ed. 1037 (1927) (defendant's income is subject to tax); *Brushaber v. Union Pac. R.R. Co.,* 240 U.S. 1, 19–20, 36 S.Ct. 236, 60 L.Ed. 493 (1916) (the right of Congress to impose income tax cannot be doubted); *Zmuda v. C.I.R.,* 731 F.2d 1417 (9th Cir.1984) (affirming tax court's decision that the trust was a sham, in part, on the ground that the income that they pre-

viously collected "did not change its character through this phony diversion."); *Muhich v. Commissioner of Internal Revenue,* 238 F.3d 860 (7th Cir.2001) (holding that a trust arrangement where the defendants placed personal assets into five trusts but retained total control over the assets lacked economic substance and therefore should not be recognized by the IRS); *United States v. Raymond,* 228 F.3d 804, 812 (7th Cir.2000) (characterizing "representations that payment of income tax is a voluntary activity" as "clearly false"); *O'Donnell v. Commissioner,* 726 F.2d 679, 681 (11th Cir.1984) (rejecting a trust where the taxpayer transferred his income to the trust and claimed business deductions for living expenses).

### C. *Defendants knew or should have known of the false and fraudulent nature of the statements.*

Defendant Stephensons tax theories are wholly without legal merit. He knew or should have known this fact, in part because none of the authorities he cites in his materials support his tax theories or his teachings. The defendant has reason to know that there is no legal support for his tax theory. In his book *Business Engineering Estate Planning & Asset Protection,* Stephenson claims to have "a string of certifications in the field of law including a Doctorate in Common Law." Despite his claims, he is not a lawyer and is not authorized to practice law in this state. His attempt to distinguish "lawyers" and attorneys is nonsensical and irrelevant. Stephenson advertises on his office door that he is a member of the Federal Bar Association licensed under FBA # 8830 [3] and has claimed, falsely, that he is a member in good standing of the American Bar Association licensed under number 00784254.[4]

---

**3.** Plaintiff's Exh. 1.

**4.** Affidavit of David Carroll Stephenson in Support of Motion for More Definite Statement: 3: 12–14.

Stephenson's qualifications, like his theories, are inaccurate, and Stephenson must know this. This element of the plaintiff's injunction claim is established.

### D. Defendants' statements are material.

■ If a particular statement has a substantial impact on the decision-making process or produces a substantial tax benefit to a taxpayer, the matter is properly regarded as "material" within the meaning of § 6700. *United States v. Estate Preservation Services,* 38 F.Supp.2d 846, 855 (E.D.Cal.1998) (citing *United States v. Buttorff,* 761 F.2d 1056, 1059 (5th Cir. 1985), *aff'd,* 202 F.3d 1093 (9th Cir.2000)). The United States claims to have lost at least $43 million in tax revenue as a result of Stephenson's tax shelters. (Martin Dec. 9: 3–4). His statements are material.

### E. Likelihood of Future § 6700 Violations

■ "Factors that a court may consider in determining the likelihood of future Section 6700 violations and thus, the need for an injunction include: (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition or non-recognition; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated." *Estate Preservation Services,* 202 F.3d at 1105.

#### 1. The gravity of the harm is substantial.

As a result of Stephenson's activities, the United States has already lost at least $43 million in lost tax revenue, (Martin Dec. 9: 3–4). Additionally, Stephenson's customers suffer substantial harm, as they too are in violation of income tax laws.

#### 2. The extent of the defendant's participation is substantial.

Defendant instructs his customers to evade taxes by not reporting substantial amounts of income to the IRS, by instructing customers to not file trust income tax returns, and to not withhold tax on their employees' wages, (McCourt Decl. 3: 8–25). Stephenson solicits customers through seminars, books and word-of-mouth. Stephenson sends the forms, sets up the trusts, and serves as "executive trustee" of the trusts. His participation is substantial.

#### 3. Defendant had the requisite scienter.

One definition of scienter is "a degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission." Black Law Dictionary (7th Edition 1999). Stephenson claims to be an educated and sophisticated individual. Additionally, as discussed in, *supra* part II, section C, Stephenson claims to be a licensed member of both the Federal Bar Association and the American Bar Association. Stephenson possesses that degree of knowledge that makes him legally responsible for his violation of I.R.C. § 6700.

#### 4. The infraction is reoccurring.

As of March 2000, Stephenson had 472 customers in 22 states, as well as Canada. (Martin Decl. 4: 1). Stephenson has continued to promote his program after March 2000. The court has reason to believe that Stephenson will continue to engage in this conduct until this court enjoins him from so doing.

Based on the foregoing factors, this court finds that the likelihood of future violations of section 6700 is great. Accordingly, the Court finds that Defendants should be preliminarily enjoined under

I.R.C. § 7408 and that the issuance of this injunction is appropriate to prevent the recurrence of such conduct.

### III. *Violation of I.R.C. § 7402*

The court also finds that (1) plaintiff has shown a strong likelihood of success on the merits; (2) irreparable injury to the plaintiff; and (3) issuing the injunction advances the public interest by precluding defendants from violating internal revenue laws. Thus, employing the traditional equitable factors, an injunction is also appropriate under section 7402.

### IV. *Conclusion*

Based on the foregoing factual findings and for good cause shown, this Court ORDERS that defendants David Carroll Stephenson, individually and d/b/a American Business Estate & Tax Planning Service and Advocate and Associates, Inc.; Advocate NW & Co., Inc; A–1 Credit & Co.; American Business Law, Inc.; and American Business & Estate Planning are PRELIMINARILY ENJOINED, pending the final disposition of this matter, from:

1. Organizing, promoting, marketing or selling, or assisting in organizing, promoting, marketing or selling, any plan or arrangement which advises or encourages taxpayers to attempt to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including those that promote, sell, or advocate the use of abusive tax shelters;

2. Engaging in conduct subject to penalty under I.R.C. § 6700, including organizing or selling a plan or arrangement and making or furnishing a statement regarding the excludability of income that they know or have reason to know is false or fraudulent as to any material matter;

3. Causing other persons and entities to understate their federal tax liabilities and avoid paying federal taxes;

4. Engaging in any conduct subject to penalty under I.R.C. § 6701, *i.e.,* aiding, assisting, or advertising with respect to the preparation or presentation of any portion of a return or other document knowing that such assistance or advice will result in the understatement of another person's income tax liability;

5. Engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws.

Furthermore, pursuant to I.R.C. § 7402, defendants are ORDERED to within ten days file with the court and serve upon the government a complete list of customers (including names, addresses, phone numbers, and social security numbers or employer identification numbers) who have purchased any trust or other type of entity from defendants, or sought or received any tax advice from defendants.

Pursuant to I.R.C. § 7402, defendants are further ORDERED, at their own expense and as a corrective measure, to provide a copy of this injunction to each of their customers, current and former, within ten days of the entry of the injunction. Defendant David Carroll Stephenson must file a sworn certificate of compliance stating that defendants have complied with this portion of the order, within ten days of the date of this order, and must attach a copy of all correspondence sent with the complaint and the injunction.

Pursuant to I.R.C. § 7402, defendants are further ORDERED to prominently display a copy of this preliminary injunction in the front window of their business office, located at 7406 27th Street West, Suite 17, Tacoma, Washington 98466. This Posting shall be maintained for one year

from the date of this preliminary injunction.

It is further ORDERED that this preliminary injunction shall become effective immediately.